UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,                                Criminal No. 10-313(1) (DWF)

            Plaintiff,

v.                                                                                      **MEMORANDUM
OPINION AND ORDER**

Jesse Mendoza,

            Defendant.

---

Jesse Mendoza, Defendant, *Pro Se*.

Ana H. Voss, Andrew S. Dunne, Andrew R. Winter, and Michael L. Cheever, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

---

## INTRODUCTION

This matter is before the Court on Defendant Jesse Mendoza's ("Mendoza") *pro se* motion for compassionate release in light of the COVID-19 pandemic.[1] (Doc. No. 522 ("Motion").) The United States of America (the "Government") opposes Mendoza's

---

[1] While Mendoza's Motion specifically cites 18 U.S.C. § 3582(c)(1)(A)(i) ("Compassionate Release") as grounds for release, his Reply also requests release pursuant to the Coronavirus Aid, Relief, and Economic Security Act Pub. L. No. 116-136, 134 Stat. 281 (2020) ("CARES Act"). Granting deference to Mendoza as a *pro se* litigant, the Court considers the argument in his Reply and construes his request for release under both the CARES Act and pursuant to Compassionate Release. "A document filed *pro se* is to be liberally construed." *United States v. Sellner*, 773 F.3d 927, 932 (8th Cir. 2014) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citation omitted). Notwithstanding, as discussed below, the Court finds that Mendoza's Motion fails under either analysis.

Motion.[2]  (Doc. No. 524.)  For the reasons set forth below, the Court respectfully denies Mendoza's Motion.

## BACKGROUND

On July 28, 2011, pursuant to a plea agreement, Mendoza entered pleas of guilty to Count 1, Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine and 100 Kilograms or More of Marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846 and to Count 4, Aiding and Abetting Money Laundering to Conceal in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2, of the six-count superseding indictment in this case.  (Doc. Nos. 5, 249, 250.)  On November 26, 2012, Mendoza was adjudged guilty as to Counts 1 and 4, and Counts 2, 3, 5, and 6 were dismissed on the motion of the Government.  (Doc. No. 369 ("Judgment") at 1.)  At sentencing, the Court adopted the presentence investigation report ("PSR") with changes, including adjusting the base offense level to reflect the amount of marijuana for which Mendoza was held responsible resulting in an advisory guidelines range of 324 to 405 months of imprisonment.  (Doc. No. 370 ("Stmt. of Reasons") at Sec. I B.1, Sec. III.)  The Court imposed a sentence of 252 months' imprisonment for each count, to run concurrently, to be followed by a term of supervised release of 5 years per count, also to

---

[2]  The Court also received and considered Mendoza's reply to the Government's opposition.  (Doc. No. 529 ("Reply").)  Mendoza's reply was due June 24, 2020.  (Doc. No. 527.)  The court received an initial reply on July 10, 2020.  (Doc. No. 528.)  The Court received an updated reply, substantively the same but with attachments (Doc. No. 529), and explanatory letter (Doc. No. 530) on July 13, 2020.  The Court recognizes the difficulties Mendoza overcame to submit his reply and therefore accepts the untimely filing.

run concurrently, after granting a downward variance on Mendoza's motion and over the objection of the Government.  (*Id.* at Sec. VI B.2; Judgment at 2-3.)

On November 17, 2015, the District of Minnesota Probation and Pretrial Services Office ("Probation") issued a "2014 Drug Retroactivity Letter" with respect to Mendoza's sentence.  (Doc. No. 471 ("Probation Letter").)  The Probation Letter outlined the applicability of November 2014 amendments to the United States Sentencing Guidelines ("Guidelines") Drug Quantity Table.  (Probation Letter at 1-2.)  The Probation Letter noted that Amendment 782 to the Guidelines reduced the base offense level of each listed drug and, in certain circumstances, could be applied retroactively.  (*Id.*)  As specifically applied to Mendoza's case, under Amendment 782 the Guidelines offense level was reduced from 36 to 34, resulting in a Guidelines range reduced from 324 to 405 months down to 262 to 327 months' imprisonment and subject to a ten-year mandatory minimum sentence.  (*Id.* at 2.)  Mendoza did not move for a sentence reduction under the amended Guidelines.

The Court amended Mendoza's sentence on March 5, 2019, reducing his term of imprisonment by 40 months to 212 months per count, again to run concurrently, based upon a motion by the Government for a reduction under Fed. R. Crim. P. 35(b).  (Doc. No. 492 ("Amend. Stmt. of Reasons") Sec. VIII.)  Mendoza is 52 years of age and currently serving his sentence at the federal medical center in Rochester, Minnesota ("FMC-Rochester") with a scheduled release date of January 18, 2026.[3]

---

[3]  Inmate Locator, *Find an inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited July 13, 2020).

On March 14, 2019, Mendoza moved for a reduction in his sentence pursuant to Sections 404 and 603 of the First Step Act.[4]  (Doc. Nos. 493 ("March 2019 Request"), 503 ("March 2019 Reply").)  He asked the Court to "determine whether [he] [was] eligible for relief" under the provision of the First Step Act that makes the Fair Sentencing Act of 2010 retroactive, and argued that his accomplishments since he was placed in custody and his plans should he be released demonstrated extraordinary and compelling reasons to reduce his sentence.  (*See* March 2019 Request; March 2019 Reply.)  The Court found that because Mendoza's sentence was imposed in accordance with the Fair Sentencing Act, he was not eligible for a reduced sentence pursuant to Section 404 of the First Step Act.  (Doc. No. 512 ("2019 Order") at 6.)  The Court also denied without prejudice Mendoza's March 2019 Request pursuant to Section 603(b) because the Court found that Mendoza failed to exhaust his administrative remedies.[5]  (*Id.* at 9.)

---

[4]   Although Mendoza did not expressly invoke Section 603 in his March 2019 Request, the Court interpreted the inclusion of attachments documenting his petition to the BOP for compassionate release pursuant to the BOP's Program Statement Number 5050.50 ("P5050.50"), which describes procedures for the implementation of compassionate release following the amendment of 18 U.S.C. § 3582 through the First Step Act, as a request for the Court's consideration under Section 603(b).  (Doc. No. 512 ("November 2019 Order") at 7; *see also*, Doc. No. 503 (citing Fed. Bureau of Prisons, U.S. Dept. of Justice, Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (Jan. 17, 2019) (avail.
at https://www.bop.gov/policy/progstat/5050_050_EN.pdf)).)

[5]   Mendoza submitted an initial request for Compassionate Release to the warden at FMC Rochester on August 1, 2019.  (*See* Doc. No. 507 ("Denial") at 3; *see also*, Reply, Ex. 1 at 1.)  His request was denied on August 19, 2020 (Denial at 2;*see also* Reply Ex. 1 at 2.)  Mendoza appealed the initial decision, but his request was denied again as stated in

4

On February 9, 2020, Mendoza filed a subsequent *pro se* request for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) on grounds similar to those in his March 2019 Request. (Doc. No. 517 ("Feb. 2020 Request"); *see also* Doc. No. 503.) He asserted that he had exhausted his administrative remedies, and argued that "extraordinary and compelling reasons" warranted his release when he had served 60% of his sentence, been rehabilitated, and had a detailed release plan.[6] (*Id.* at 1.) On April 23, 2020, Mendoza filed a motion to amend his Feb. 2020 Request, and to submit supporting medical records in light of the COVID-19 pandemic. (Doc. Nos. 518 ("Motion to Amend"); 519 ("Medical Records 1").) On May 8, 2020, the Court granted Mendoza's Motion to Amend and accepted his medical records.[7] (Doc. No. 520.)

Mendoza now requests release under both the CARES Act, and pursuant to Compassionate Release in light of the COVID-19 pandemic. (*See* Motion; Reply.) In

---

a letter from the warden at FMC Rochester dated October 3, 2019. (Denial at 3; *see also* Reply, Ex. 1 at 3.) The Denial advised that an appeal of the latest response could be filed with the BOP Regional Director within 20 days of the response, and that if he was dissatisfied with that response, he could file yet another appeal to the BOP general counsel within 30 days. (Denial at 3; *see also* Reply, Ex. 1 at 3.) In a supplement to his March 2019 Request, Mendoza asked that the Court review and approve his appeal "as [he] continue[d] with the administrative remedy process through the BOP." (Denial at 1.) The Court ultimately denied Mendoza's March 2019 Request for compassionate release for failure to exhaust administrative remedies; however, it did so without prejudice and advised Mendoza that subsequent motions pursuant to 18 U.S.C. § 3582(c) would not be barred. (November 2019 Order at 9.)

[6] On April 22, 2020, the Court received a letter from one of Mendoza's acquaintances attesting to Mendoza's rehabilitation and in support of his release. (Doc. No. 516.)

[7] Mendoza submitted additional medical records with his Reply. (Reply, Ex. 3 ("Medical Records 2.") Henceforth, the Court refers collectively to Medical Records 1 and Medical Records 2 as just ("Medical Records").

5

addition to health concerns in light of the COVID-19 pandemic, Mendoza argues that his accomplishments while in custody and detailed release plan support his release.  (*See* Motion; Reply.)  According to his Medical Records, Mendoza suffers from a deviated septum, hypoglycemia, and gastroesophageal reflux.[8]  (Medical Records.)  Mendoza also asserts that he "suffers from obesity, has been diagnosed as needing blood thinners, and also has breathing issues that would make him more vulnerable" to COVID-19.  (Reply at 4.)  At various times previously, Mendoza also suffered from anxiety, allergic rhinitis, sleep apnea, stomach pain, acute esophagitis, acute pancreatitis, shortness of breath, abnormal blood chemistry, and peptic ulcer disease.  (Medical Records.)  Mendoza asks the Court to "[t]ransfer [him] directly to home confinement, and complete his sentence away from the crowded atmosphere of the prison and halfway house, to avoid exposure to the spreading life threatening virus" (Reply at 8) or to "take into strong consideration this pandemic when considering whether or not to grant his [r]eduction [i]n [s]entence" (Motion at 2).

## DISCUSSION

The Court first considers Mendoza's request for release under the CARES Act, and then pursuant to Compassionate Release.  As discussed below, the Court declines to grant his request under either analysis.

---

[8]   The Court references conditions highlighted by Mendoza in his extensive medical history.  (*See* Medical Records.)

## I.     The CARES Act

The First Step Act ("FSA") was enacted into law on December 21, 2018.  *See* Pub. L. No. 115-391, 132 Stat. 5194.  As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007.  *See* 18 U.S.C. § 3624(c)(1).

In its previous form, Section 3624 authorized placement of prisoners into home confinement, providing that the BOP may place a prisoner for 10 percent of the term of his or her imprisonment or six months, whichever is shorter.  18 U.S.C. § 3624(c)(2).  Now, as amended, Section 3624 additionally provides that the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."  *Id.*; FSA § 602.  Notably, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment."  18 U.S.C. §§ 3624(c)(4), 3621(b).

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations.  The BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, starting with the inmates incarcerated at facilities that have experienced COVID-19 cases (FCI Oakdale, FCI Danbury, FCI Elkton) and

7

similarly-situated facilities to determine which inmates are suitable candidates for home confinement.  BOP Update on COVID-19 & Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (Last accessed May 12, 2020).

As noted above, the BOP has exclusive authority to determine the placement of prisoners.  *See* 18 U.S.C. § 3624(c)(2).  Neither the CARES Act nor the FSA alters this authority.  *See United States v. James*, Cr. No.15-255 (SRN) 2020 WL 1922568, at *2 (D. Minn. Apr 21, 2020); *United States v. Kluge*, Cr. No. 17-61 (DWF), 2020 WL 209287, at *4 (D. Minn. Jan 14, 2020); *United States v. Roy*, Cr. No. 15-303 (MJD), 2019 WL 6910069, at *1 (D. Minn. Dec. 19, 2019); *Ward v. Bureau of Prisons*, Civ. No. 3:19-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019), *report and recommendation adopted*, Civ. No. 3:19-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30, 2019); *see also Xiao v. La Tuna Fed. Corr. Inst*., Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Moreover, Courts have consistently held that placement questions are not reviewable.  *See*, *e.g.*, 18 U.S.C. § 3621(b); *United States v. Shields*, Cr. No. 12-00410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019) ("The authority to determine [defendant's] placement for the remainder of his sentence is vested solely within the discretion of the BOP"); *United States v. Parish*, Cr. No. 14-166, 2016 WL 7441142, at *1 (E.D. La. Dec. 27, 2016); *Deffenbaugh v. Sullivan*, Cr. No. 5:19-HC-2049-FL, 2019

8

WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); *Ward*, 2019 WL 1930025 at *3 (extensive discussion); *Rizzolo v. Puentes*, Civ. No. 119-00290SKOHC, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019); *United States v. Perez-Asencio*, Cr. No. 18-3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019); *United States v. Burkhart*, Cr. No. 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019); *Parsons v. Howard*, Civ. No. 3:18-1406, 2019 WL 469913, at *4 (M.D. Pa. Feb. 6, 2019); *Burg v. Nicklin*, Civ. No. EP-19-24-FM, 2019 WL 369153, at *3-4 (W.D. Tex. Jan. 29, 2019). Furthermore, "[i]t is well established that prisoners do not have a constitutional right to placement in a particular prison facility or place of confinement." *James*, 2020 WL 1922568, at *5 (citing *Khdeer v. Paul*, Civ. No. 18-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)).

In short, because home confinement is a place of confinement, the Court finds that it is solely within the BOP's discretion to dictate. *See* 18 U.S.C. § 3624(c). Accordingly, to the extent Mendoza seeks release to home confinement pursuant to the CARES Act, the Court respectfully denies his request because it lacks the authority to consider it.

**II.   Compassionate Release**

Under 18 U.S.C. § 3582(c)(1)(A)(i), a Court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement addressing reduction of sentences under § 3582(c)(1)(A) asserts in relevant part that a court may reduce a defendant's term of imprisonment after considering § 3553(a) factors if it finds that: (1) "extraordinary and compelling reasons warrant the reduction;" (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "the reduction is consistent with this policy statement."[9] USSG § 1B1.13 ("Statement"). The Statement includes an application note that defines "extraordinary and compelling reasons" as (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.[10] *Id.*

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

---

[9] While the policy statement refers only to motions filed by the BOP Director, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

[10] The Statement cites examples of qualifying medical conditions including metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia. (Statement.)

10

the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[11] *Id.*

While Mendoza asserts that he has exhausted his administrative remedies (Motion at Reply at 3; *see also* Feb. 2020 Request at 1), the record does not reflect that Mendoza has made a claims-specific request to the warden at FMC Rochester based on his COVID-19 concerns.[12] "[T]he Court does not view the administrative exhaustion of an initial request for compassionate release as serving to discharge that requirement for subsequent requests based on different evidence and argument." *United States v. Jenkins*, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020). This is because "the Court cannot consider a motion for compassionate release that is based on evidence or arguments that weren't presented to the Bureau of Prisons first." *Id.*; *see also United States v. Mogavero*, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper exhaustion necessarily requires the inmate to present the same factual basis for the compassionate-release request to the warden. Indeed, 28 C.F.R. § 571.61, which outlines the process for submitting a § 3582(c)(1)(A) request to the warden, requires the request to contain, 'at a minimum . . . [t]he extraordinary or compelling circumstances that the inmate believes

---

[11] While judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[12] As noted above, Mendoza amended his Feb. 2020 Request on May 8, 2020 based on concerns related to the COVID-19 pandemic. To the extent that Mendoza's assertion is based on having exhausted his administrative remedies with respect to his Feb. 2020 Request, the Court addresses his Feb. 2020 Request prior to his amendments below.

warrant consideration.'" (citing 28 C.F.R. § 571.61)); *United States v. Valenta*, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020); *United States v. Gardner*, 2020 WL 1867034 (D. Minn. Apr. 14, 2020). Accordingly, while Mendoza may have exhausted his administrative remedies with respect to his Feb. 2020 Request, he was obligated to submit his amended request first to the warden at FMC Rochester to consider the additional basis for release.

Because Mendoza has failed to exhaust his administrative remedies, the Court must deny his Motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) because it lacks authority to consider his request. *See, e.g.*, *United States v. Kluge*, Cr. No. 17-61, 2020 WL 209287, at *4 (D. Minn. Jan. 14, 2020); *United States v. Roy*, Cr. No. 15-303, 2019 WL 6190069, at *1 (D. Minn. Dec. 19, 2019); *United States v. Gutierrez*, Cr. No. 01-331, 2019 WL 8219448 at *3 (D. Minn. Nov. 6, 2019).

Even if the Court had the authority to consider Mendoza's Motion pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court finds that it also fails on the merits because Mendoza does not present extraordinary and compelling reasons to warrant immediate release. Currently, FMC-Rochester has no reported cases of the COVID-19 virus. BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last accessed July 13, 2020). Moreover, there is no indication that FMC-Rochester will be unable to handle an outbreak or accommodate Mendoza's specific health concerns.[13] Having reviewed

---

[13] Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp

12

Mendoza's Medical Records, the Court finds no medical condition that meets the demanding standard for Compassionate Release.  While the Court understands the gravity of the COVID-19 pandemic and is mindful of Mendoza's concerns, the Court finds that the circumstances do not present an extraordinary and compelling reason to warrant release.[14]

In recognition that Mendoza is *pro se* and that he may not have understood the implications of amending his Feb. 2020 Request with respect to the exhaustion requirement, the Court also addresses the arguments in his Feb. 2020 Request.  In short, after a careful review of Mendoza's Feb. 2020 Request, supporting documentation and letter of support, the Court finds that the circumstances do not meet the demanding standard for release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  The Court recognizes and commends Mendoza for his commitment to rehabilitation and accomplishments while incarcerated; however, the Court cannot authorize Compassionate Release at this time.

In summary, the Court must deny Mendoza's request for Compassionate Release both procedurally and on the merits with respect to his COVID-19 claims.  Moreover, to

---

(last accesses July 13, 2020).  Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates.  (*Id.*)  Current measures also include a 14-day isolation period, and limited group gatherings.  *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan Phase V, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last accessed July 13, 2020).

[14] Because Mendoza fails to present a "extraordinary and compelling" reason to warrant release, the Court need not consider the § 3553(a) factors or whether he poses danger to the safety of any other person or to the community.  *See* 18 U.S.C. § 3582(c)(1)(A); Statement.

the extent the Court is able to consider Mendoza's Feb. 2020 Request prior to amendment, the Court denies it on the merits because the circumstances do not rise to an extraordinary and compelling reason to warrant immediate release.

## CONCLUSION

For the reasons set forth above, the Court finds that it lacks authority to consider Mendoza's request for release under the CARES Act because home confinement is solely within the BOP's discretion to dictate.  Moreover, the Court finds that Mendoza is ineligible for Compassionate Release because he has failed to exhaust his administrative remedies with respect to his COVID-19 claims.  Even if the Court could consider his Motion, the Court denies it on the merits because Mendoza does not present extraordinary and compelling reasons to warrant release with respect to his medical concerns or his accomplishments while incarcerated.  Finally, to the extent the Court is able to consider Mendoza's Feb. 2020 Request prior to amendment, the Court denies it on the merits because the circumstances presented do not rise to an extraordinary and compelling reason to warrant immediate release.

**ORDER**

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Jesse Mendoza's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. [522]) is respectfully **DENIED**.

Date:  July 16, 2020                              s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge